<b>United States District Court</b><br>For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GERENCSER, | ) |
| Plaintiff, | ) No. C-08-4521 SC |
| v. | ) |
| UNITED STATES OF AMERICA; DAVID RIDDLE, | ) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| Defendants. | ) |

## I.   INTRODUCTION

Lieutenant Colonel Eric Gerencser ("LTC Gerencser" or "Plaintiff") filed this action for legal malpractice against David Riddle ("Riddle") and the United States of America (collectively "Defendants"). Am. Compl., Docket No. 4. Before this Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("MTD"). Docket No. 22. Defendants also seek to substitute the United States for Riddle, effectively removing Riddle as a defendant from this suit. Id. Plaintiff submitted an opposition to the MTD, Docket No. 26, and Defendants have filed a reply, Docket No. 32. Having considered the parties' submissions, the Court GRANTS Defendants' request to substitute Riddle out of the action, and GRANTS Defendants' MTD.

## II. BACKGROUND

This suit stems from a legal dispute between LTC Gerencser and his wife. Gerencser was an officer in the United States Army, and his wife was a civilian employee of the U.S. Department of Defense Schools. Am. Compl. ¶ 10. Prior to 2000, both were living in Germany, where LTC Gerencser was stationed. Id. In late 2000, LTC Gerencser was ordered to return to a post in Monterey, California. Id. ¶ 11. His wife remained in Germany, and thereafter claimed that she was entitled to support payments. Id. ¶ 12.

As the spouse of an active-duty officer, Mrs. Gerencser was assisted by a lawyer from the Judge Advocate General Corps, Captain Fitzgerald ("CPT Fitzgerald"). Id.; Gerencser Decl. ¶¶ 34-35.[1] LTC Gerencser states that his wife's claims were completely spurious, but that he did not know this at the time. Gerencser Decl. ¶¶ 37-39. The merits of these underlying claims are not before the Court and do not affect the Court's jurisdiction.

By a letter dated December 30, 2003, CPT Fitzgerald contacted LTC Gerencser and told him that he owed his wife money under Army Regulation 608-99. Id. ¶ 41. LTC Gerencser thereafter sought legal advice regarding his wife's claims. Id. ¶¶ 42-43. At this time, LTC Gerencser was assigned to the US Navy at the Naval Postgraduate School in Monterey, California, and was entitled to legal assistance from the military. Id. ¶¶ 2, 11-12; see also 10

---

[1] LTC Gerencser filed a declaration in support of his opposition to the MTD. Docket No. 27.

2

1  U.S.C. § 1044. He requested legal aid from the Navy, and was
2  referred to the Army Judge Advocate's Office at the Presidio of
3  Monterey (the "Presidio"), where his case was assigned to Riddle.
4  Id. ¶¶ 3-4. Riddle is a civilian who holds the title of Chief,
5  Legal Assistance for the Presidio. Riddle Decl. ¶ 13.[2] Riddle
6  had previously represented LTC Gerencser in a separate dispute.
7  Id. ¶ 18.

8  LTC Gerencser first met with Riddle to discuss the dispute
9  with his wife at Riddle's office in the Presidio on March 1, 2004.
10 Id. ¶ 19. Over the course of the next several days, LTC Gerencser
11 and Riddle met several more times at Riddle's office, and also
12 communicated over Riddle's military email account and through
13 Riddle's office telephone. Id. LTC Gerencser contends that
14 Riddle negligently failed to inform him that he was eligible for
15 numerous exceptions under AR 608-99, and that he had no obligation
16 to pay anything to his wife. Am. Compl. ¶ 19. According to LTC
17 Gerencser, this failure afforded his wife undue leverage, and
18 later that week her JAG lawyer threatened to initiate criminal
19 proceedings against LTC Gerencser under the Uniform Code of
20 Military Justice. Id. ¶¶ 16, 19.

21 On Saturday, March 6, 2004, LTC Gerencser received a phone
22 call from his wife, and she informed him that CPT Fitzgerald had
23 "already done all of the legal work" to sanction him, and that it
24 would be presented to him at the JAG office in Monterey on Monday.
25 Gerencser Decl. ¶ 63. In response, LTC Gerencser wired his wife

---

[2] Riddle filed a declaration in support of the MTD. Docket No. 33.

3

the amount the money to which she claimed entitlement, totaling $46,311.80. Id. ¶ 64.

LTC Gerencser thereafter discovered that his wife's claims and threats were entirely without legal basis. Id. ¶¶ 37-39. He alleges that Riddle was negligent and incompetent, and that the United States was negligent in assigning his case to Riddle. Am. Compl. ¶ 19. He now seeks to recover the full amount paid to his wife, plus opportunity costs and taxes paid for earnings that were never constructively received, totaling $94,948.64. Gerencser Decl. ¶ 74. The United States has moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. MTD at 1.

### III. LEGAL STANDARD

Tort claims against the federal government proceed under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), by which the United States waived sovereign immunity with respect to common law torts committed by federal employees acting within the scope of their employment. The United States is the proper and exclusive defendant in such suits, as long as the allegedly tortious actions were performed by the employee "while acting within the scope of his office or employment." See 28 U.S.C. § 2679(b)(1).

Defendants contend that the Court lacks subject matter jurisdiction under the doctrine set forth in Feres v. United States, 340 U.S. 135 (1950). The FTCA does not waive immunity in all tort actions, and an exception exists for certain suits brought by military personnel. The Supreme Court has held that

4

"the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146.

The Ninth Circuit has put forward a test to determine whether an injury arises out of or in the course of activity incident to service. The Court must examine:

> 1) the place where the negligent act occurred;
> 2) the plaintiff's duty status when the negligent act occurred;
> 3) the benefits accruing to the plaintiff because of his status as a service member; and
> 4) the nature of the plaintiff's activities at the time of the negligent act.

Schoenfeld v. Quamme, 492 F.3d 1016, 1019 (9th Cir. 2007). None of these factors are dispositive, and the Court must examine the totality of the circumstances. Id.

Where a defendant launches a factual attack on the jurisdiction of a Court, the Court may consider evidence outside of a complaint, such as affidavits submitted by either party, and does not have to assume that allegations are truthful. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**IV. DISCUSSION**

    A.    <u>Substitution of the United States for Riddle</u>

As long as Riddle was acting within the scope of his employment for the United States, he is not a proper defendant. 28 U.S.C. § 2679(b)(1). Pursuant to 28 U.S.C. § 2679(d), the Attorney General (through the Chief of the Civil Division of the United States Attorney's Office) has certified that Riddle was acting within the scope of his authority when he provided legal

5

1 advice to LTC Gerencser. See MTD, Ex. 2 ("Certification") at 2.
2 LTC Gerencser has objected to this Certification, Opp'n at 19-20,
3 and the Certification is subject to review by the Court, see
4 Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995).

5 LTC Gerencser asserts that Riddle was acting outside of the
6 scope of his employment. Opp'n at 19-20. His sole argument is
7 that Riddle was represented to him as an "attorney" and "legal
8 assistance officer" even though Riddle does not possess a license
9 to practice law in California. However, Riddle need not possess a
10 California license to practice in his current position. See 10
11 U.S.C. § 1044(d). Riddle's then-supervisor, as Senior Civilian
12 Attorney in the Presidio, has averred to this Court that in order
13 to provide legal assistance to military personnel under 10 U.S.C.
14 § 1044, the Army requires only that a civilian attorney be a
15 member of a state bar "in good standing," irrespective of active
16 status. Truscott Decl. ¶ 6.[3] Riddle is a member "in good
17 standing" of the Hawai'i state bar on inactive status. Riddle
18 Decl., Ex. A.

19 The Court concludes that there is no basis for rejecting the
20 Certification of the United States Attorney's Office on these
21 facts. Riddle was acting within the scope of his employment when
22 he provided legal assistance to LTC Gerencser. Pursuant to 28
23 U.S.C. § 2679(d), the United States is substituted in as defendant
24 for Riddle, and all claims are DISMISSED as to Riddle.

25     B. The Feres Doctrine

---

[3] Wesley L. Truscott, Jr., filed a declaration in support of the MTD. Docket No. 34.

The Court now turns to the question of whether this action is barred by the Feres doctrine. In doing so, the Court examines the totality of the circumstances surrounding LTC Gerencser's alleged injury to determine whether it arose out of his service, addressing the four previously-mentioned factors applied by the Ninth Circuit in Schoenfeld. 492 F.3d at 1019; see also McConnell v. United States, 478 F.3d 1092, 1095 (9th Cir. 2007). LTC Gerencser urges the Court to forgo analysis under these factors, as they seem designed to address a single cataclysmic event rather than an ongoing incident of malpractice. Opp'n at 19. The Court disagrees, and notes that several factors of the test -- in particular, whether the plaintiff was enjoying a benefit of service and the nature of the plaintiff's activities -- are quite probative of whether a malpractice injury occurred in the course of activity incident to service.

The first question is where the injury took place. Schoenfeld, 492 F.3d at 1019. LTC Gerencser alleges that the negligence took place in the offices of military personnel at the Presidio who assigned his case to Riddle, Gerencser Decl. ¶¶ 42-44, and thereafter within Riddle's Presidio office or by use of his military email address, Riddle Decl. ¶ 19. The second factor is the duty status of the plaintiff. See Schoenfeld, 492 F.3d at 1019. LTC Gerencser has confirmed that he was assigned to the U.S. Navy's Naval Postgraduate School at that time of the injury. Gerencser Decl. ¶ 2.

The third factor is whether LTC Gerencser was enjoying "benefits accruing . . . because of his status as a service

7

1 member." Schoenfeld, 492 F.3d at 1019. A serviceman who is
2 injured while using military facilities or services may not bring
3 suit against the United States. See, e.g., McConnell, 478 F.3d
4 1095 (plaintiff injured by use of boat rented only to "active duty
5 members"); Persons v. United States, 925 F.2d 292, (9th Cir.
6 1991) (plaintiff injured by alleged malpractice in military
7 hospital). LTC Gerencser was enjoying a benefit -- free legal
8 services -- that would not have been provided to the public at
9 large. C.f. Schoenfeld 492 F.3d at 1024 (plaintiff could bring
10 suit for injury that occurred while using public road in military
11 base, as "any member of the public could have done"). It is of no
12 consequence that LTC Gerencser does not perceive Riddle's legal
13 services to have been of "benefit" to him. Opp'n at 19. The
14 result of the services received is irrelevant to this inquiry, as
15 shown by numerous decisions that apply the Feres doctrine to
16 instances of alleged medical malpractice. See, e.g., Persons, 925
17 F.2d at 296 ("This is especially true in cases alleging medical
18 malpractice in a military facility."); Atkinson v. United States,
19 825 F.2d 202 (9th Cir. 1987) (after delivering stillborn child,
20 plaintiff alleged medical malpractice for treatment received at
21 military hospital).

22 The fourth factor, the nature of LTC Gerencser's activities,
23 also suggests that the alleged injuries were incident to service.
24 Although LTC Gerencser sought legal advice to resolve a personal
25 dispute with his wife, it was a dispute that arose from the
26 interpretation and enforcement of military regulations. Gerencser
27 Decl. ¶ 31-37. Even if this legal dispute were purely personal in

8

1 nature, this factor alone could not prevent the application of the
2 Feres doctrine.  The Ninth Circuit has repeatedly held that
3 plaintiffs injured while undertaking personal activities (e.g.,
4 recreation) available to them only because of their service cannot
5 bring suit.  See, e.g., McConnell, 478 F.3d 1095 (plaintiff
6 injured by recreational use of boat rented to servicemen); Costo
7 v. United States, 248 F.3d 863, 865-66 (9th Cir. 2001)(same); Bon
8 v. United States, 802 F.2d 1092 (9th Cir. 1986)(same).
9 Considering all of these factors, the Court concludes that any
10 alleged injury to LTC Gerencser arose out of, or was in the course
11 of activity incident to, his military service.  This Court
12 therefore lacks jurisdiction.

13     The Court is not persuaded by LTC Gerencser's argument that
14 this conclusion violates his rights under the Equal Protection
15 Clause of the 5th and 14th Amendments.  Opp'n at 10.  This
16 argument has previously been presented to the Ninth Circuit.  See
17 Costo, 248 F.3d at 871-72 (Ferguson, J. dissenting).  LTC
18 Gerencser does not attempt to suggest that military personnel are
19 a suspect class, and the Supreme Court has already identified
20 several rational purposes for this doctrine.  Feres at 143-45.
21 The Court GRANTS the Defendants' MTD.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

9

**V.   CONCLUSION**

For the reasons stated above, the suit is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

May 4, 2009

_____
UNITED STATES DISTRICT JUDGE